UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF TEXAS

JODY GIBSON,                              )
                                         )
            Plaintiff,                    )
                                         )
v.                                       )
                                         )    CIVIL ACTION NO. 1:25-cv-1750-DAE
ABBOTT LABORATORIES, ST. JUDE            )
MEDICAL BUSINESS SERVICES, INC.          )
D/B/A ABBOTT MEDICAL DEVICES             )
DIVISION,                                )
                                         )
            Defendant.                    )

**JODY GIBSON'S RESPONSE IN OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DIMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

The Partial Motion to Dismiss of Defendants Abbott Laboratories and St. Jude Medical Business Services, Inc.'s (together "Abbott") highlights only certain allegations from Jody Gibson's First Amended Complaint and the Employment Discrimination Complaint filed with the Texas Workforce Commission ("Discrimination Complaint"), but leaves out a plethora of allegations including allegations regarding the hostile work environment to which she was subjected in her last 1½ years at Abbott. Gibson endured the unceasing hostility and harassment from her new supervisor – continuing almost from the beginning of the supervisor's employment through to the end of Gibson's employment on April 29, 2024 when she was constructively discharged.

## I.    BACKGROUND AND SUMMARY OF GIBSON'S RESPONSE

Abbott Laboratories and St. Jude Business Services, Inc. ("Abbott") hired Gibson  for the Global Marketing Communications in the Neuromodulation group of the Abbott Medical Devices Division.  Gibson was 59 years old at the time.  Gibson had a good working relationship with her co-workers and managers, she was performing well in her job, and received many accolades.

Plaintiff's Response in Opposition to              1
Defendants' Partial Motion to Dismiss

A year into Gibson's employment with Abbott she was assigned a new supervisor, Patricia Stepaniuk, who almost immediately exhibited bias towards Gibson because of Gibson's age. She highlighted Gibson's age in their very first meeting and thus began her hostilities. After Gibson complained about her supervisor's behavior, Gibson was subjected to an increased, unrelenting harassment campaign by Stepaniuk.

Defendants' Motion attempts to limit Gibson's claims to two – age discrimination based on disparate treatment and retaliation. Defendants have decided to gloss over and ignore Gibson's hostile work environment and retaliatory hostile work environment claims. These claims are subsumed in her age discrimination and retaliation claims. That Defendants are aware of these claims cannot be questioned – Gibsons' Discrimination Complaint specifically states that she was subjected to a hostile work environment and checked all of the appropriate "boxes" for both the hostile work environment claim and a retaliatory hostile work environment claim. Gibson's First Amended Complaint is replete with allegations describing the hostile work environment, starting with Gibson's first meeting with her supervisor when she began harassing Gibson about her age. It is safe to say that Stepaniuk dogged Gibson for the majority of the 1½ years Stepaniuk was her supervisor with the intent of forcing Gibson out of her job.

Gibson has set out an exhaustive recitation of the facts in her First Amended Complaint, which she has summarized below in Section II.B.1.

## II.    ARGUMENT

### A. Standards for a Motion to Dismiss.

At this stage – with a Partial Motion to Dismiss – Gibson's pleading need only plead enough facts to state a claim that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173, 173 L. Ed.2d 868 (2009). In determining Defendants' Motion, the Court must

accept all of Gibson's "well-pleaded facts as true, viewing them in the light most favorable to [her]." *Flores v. Select Energy Servs., L.L.C.*, 486 Fed. Appx. 429, 432 (5th Cir. 2012). "[A]ll reasonable inferences [should] be resolved in . . . [Gibson's favor, but she] mut plead 'specific facts, not mere conclusory allegations.'" *Prew v. Llano Indep. Sch. Dist.*, No. A-13-CA-144, 2013 U.S. Dist. LEXIS 109037, *4 (W.D. Tex. Aug. 1, 2013).

Gibson is not required to prove that Defendants are probably liable, but "her factual allegations must establish more than a 'sheer possibility' that the [Defendants have] acted unlawfully. *Iqbal*, 556 U.S. at 678. In other words, Gibson's job is not to show "she will ultimately prevail, . . . [but to show] she is entitled to offer evidence to support her claims." *McCorvey v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. 5:16-CV-631, 2016 U.S. Dist. LEXIS 195249, *22 (W.D. Tex. Dec. 21, 2016); *Green v. McDonough*, No. SA-22-CV-00423, 2022 U.S. Dist. LEXIS214236, *11 (W.D. Tex. Nov. 28, 2022). "Dismissal is proper only if [Gibson] 'would not be entitled to relief under any set of facts or any possible theory that [s]he could prove consistent with the allegations in the complaint.'" *Green*, 2022 U.S. Dist. LEXIS214236 at *11. Dismissals under Rule 12(b)(6) are "viewed with disfavor and [are] rarely granted." *LiVolsi v. Univ. of Tex. at Austin*, No. 1:24-CV-127, 2024 U.S. Dist. LEXIS 209019, *6 (W.D. Tex. Nov. 15, 2024).

**B. Gibson has pled hostile work environment and retaliatory work environment claims.**

Defendants claim that Gibson has pled only age discrimination and retaliation claims.[1] Dkt. 22 at 2-3. Defendants have ignored her hostile work environment claim and retaliatory hostile work environment claims, which are part of her age discrimination and retaliation claims, as is shown through the numerous allegations in the First Amended Complaint supporting both claims. Abbott has been on notice from day one that Gibson intended to plead these claims.

---

[1] Defendants mention Gibson's claim for constructive discharge, but give it short shrift. Dkt. 22 at 2, n.1.

The Attachment to Gibson's Discrimination Complaint states, "I was subjected to a hostile work environment and animus because of my age." Gibson further checked "continuing action" on her TWC Complaint as well as retaliation for filing a complaint of discrimination and for verbally complaining to Abbott's human resources departments. DKT 22-1 at 5-6, and 8. The continuing action doctrine is applicable only to hostile work environment claims. Gibson's First Amended Complaint also is replete with allegations about the hostile treatment and hostile work environment she suffered at the hands of Stepaniuk, her direct supervisor, over the course of 1½ years. *See* Section II.B.1 below.

1. Defendants' identified "discrete" acts are not so "discrete" and are not time-barred.

Defendants have set out a laundry list of restated allegations from Gibson's First Amended Complaint that they contend show that Gibson has alleged a set of discrete acts of discrimination and retaliation that all occurred before April 25, 2024. Defendants conclude that, except for her constructive discharge claim, Gibson's claims are thus time-barred and must be dismissed. Dkt. 22 at 4-5.

Defendants have taken some liberties with their timeline, making assumptions about when certain events occurred and that certain events occurred only once. The events highlighted by Defendants, however, are part of the ongoing discrimination and harassment Stepaniuk directed at Gibson. For example, Defendants contend the age-related comments all occurred in January 2023. Dkt. 22 at 5. That is not how the allegation is tated in the First Amended Complaint. At least one of the comments occurred in March 2023 and it is unknown when other similar comments occurred. Dkt 20 at ¶18 ("At a subsequent meeting in or around March 2023, Stepaniuk began referring to Gibson's 'generation' versus Stepaniuk's 'generation' in a derogatory manner as if Gibson and her methods and approach to her work were outdated, 'old school' and inferior to that

of Stepaniuk's generation.").

Likewise, Defendants identify as a discrete act Stepaniuk's blaming Gibson for delays in completing a project (Dkt. 22 at 5), but there were many more delays caused by Stepaniuk and blamed on Gibson than the one delay cited by Defendants. *See, e.g.*, Dkt. 20 at ¶¶23-24, and 31. Defendants highlight Stepaniuk's refusal to allow Gibson to travel as if it happened only one time (Dkt. 22 at 5), but the paragraph cited by Defendants on its face indicates there was more than a single instance of prohibited travel with no dates assigned to those instances. Dkt. 20 at ¶¶27 ("Stepaniuk also excluded Gibson from any travel to provide branding expertise at conferences and for other purposes . . .") and 30.

Defendants contend Stepaniuk reduced Gibson's job responsibilities one time in early 2023 or 2024 (Dkt. 22 at 5), but the First Amended Complaint alleges, **"[B]y the end of Gibson's tenure with Abbott**, Stepaniuk had orchestrated a wholesale reduction in Gibson's job responsibilities for the work she was hired to do . . . Gibson instead was directed to take over lower-level duties that previously were the responsibility of her younger coworkers." Dkt. 20 at ¶28 (emphasis added). In other words, the re-assignments of job responsibilities are alleged to have occurred continuously up to the time Gibson was constructively discharged.

Defendants' Motion demonstrates that the "discrete" acts it identified are actually related continuing acts resulting from a single scheme or pattern of discriminatory behavior by a single supervisor – Stepaniuk. This Court has stated:

> Though there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate . . . an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice . . . that gives rise to the cause of action.

*McCorvey*, 2016 U.S. Dist. LEXIS 195249 at \*43. That is exactly what Stepaniuk engaged in with

Gibson – an organized scheme to force her out of Abbott.

Gibson has alleged in her First Amended Complaint:

- Stepaniuk delivered ageist comments to her. Dkt. 20 at ¶18.

- Stepaniuk frequently made derogatory and inflammatory statements to and about Gibson in the presence of younger employees, made a threat to impose discipline with no reasonable basis for the threat, and exhibited a desire to force Gibson out of Abbott because of her age. Dkt. 20 at ¶19.

- Stepaniuk gave Gibson a negative performance evaluation when prior to Stepaniuk's arrival, Gibson was given excellent performance feedback from management and had received 4 awards from the Neuromodulation Vice President of Sales, her previous manager, her director, and a co-worker, one of which she received the month before her performance evaluation, a 3.0% raise even though Gibson took over a product update campaign leading a very successful campaign launch which grossed almost $200 million in 2023. Dkt. 20 at ¶20.

- Stepaniuk was influenced by her discriminatory bias and Gibson complained to Neuromodulation's HR Department about the ageist comments, discrimination, unwarranted criticisms, and hostile treatment from Stepaniuk, which she did at the prompting of a manager in another business unit who was aware of the mistreatment by Stepaniuk. Dkt. 20 at ¶21.

- Stepaniuk stepped up her harassing behavior toward Gibson, increasing her hostility, unreasonable rebukes, and disparaging treatment in **retaliation** for Gibson's reporting Stepaniuk's unlawful age discrimination and exhibiting obvious age discrimination toward Gibson and favoritism toward Gibson's co-workers on her team, all of whom were substantially younger than Gibson – on the order of twenty to thirty years younger. Dkt. 20 at ¶22 (emphasis added).

- Stepaniuk sabotaged Gibson's performance and reputation within Abbott, repeatedly denigrating Gibson to the other younger co-workers, refusing to grant reasonable extensions to deadlines, while giving extensions to younger co-workers, assigning Gibson less favorable work than she assigned to Gibson's younger co-workers, and complaining that Gibson was late on projects when Stepaniuk caused the delays by ignoring for months document drafts Gibson gave her to review and then raising the projects later with short deadlines when Gibson was inundated with other work (including her younger co-workers' work re-assigned to Gibson), and then blaming Gibson for the delay. Dkt. 20 at ¶¶23-24.

- Stepaniuk used a double-standard with Gibson by, for example, chastising Gibson for behaving "unprofessionally" in an email to a co-worker when she questioned a

Plaintiff's Response in Opposition to            6
Defendants' Partial Motion to Dismiss

clunky phrase that might have to be used in Abbott collateral and commenting that the phrase sounded "dumb" while at the same time Stepaniuk routinely used foul language, including "f__k" and other swear words in meetings, both in person and online, and otherwise around the office, encouraging Gibson's younger co-workers in using this kind of language by laughing and carrying on with them when they followed Stepaniuk's lead and used this language. Dkt. 20 at ¶25.

- Stepaniuk subjected Gibson to ever-increasing scrutiny, scolded her at length – for an hour on at least one occasion – for other minor "issues" such as discussing two different subject matters in one email and accidentally using the wrong acronym for a campaign in an email when Stepaniuk did the very same thing on more than one occasion. Dkt. 20 at ¶26.

- Stepaniuk excluded Gibson from any travel to provide branding expertise at conferences but included Gibson's younger co-workers, thus denying Gibson the opportunities she was assured would be part of her job when she was hired. Dkt. 20 at ¶27.

- Stepaniuk, by the end of Gibson's tenure with Abbott, had orchestrated a wholesale reduction in Gibson's job responsibilities for the work she was hired to do – which was to drive marketing campaigns – beginning to shift that work to a younger co-worker and directing Gibson to instead take over lower-level duties that previously were the responsibility of her younger coworkers, such a proofing PowerPoint presentations and overseeing the printing and storage of sales collateral, which was a new hire's role. Dkt. 20 ¶28-29, and 34.

- Stepaniuk did not allow Gibson to attend her business unit's 2023 and 2024 annual sales meetings even though Gibson had accompanied her previous manager to the annual sales meeting in 2022 and had received many compliments and a monetary company award from the Sales VP for her contributions to this annual meeting. Dkt. 20 at ¶30.

- Stepaniuk tried to bully Gibson into signing off on a project deadline that had already passed, which Gibson felt sure Stepaniuk did so she could then point out in Gibson's next review, her "failure" to meet an "agreed-upon deadline". Stepaniuk's delays on the project and her untimely demands affecting other teams who also were working on the project caused the deadline to pass with the project uncompleted. Stepaniuk refused to accept any responsibility for the delay and blamed it on Gibson. Dkt. 20 at ¶31.

- In March 2024 in Gibson's 2003 performance evaluation, Stepaniuk said Gibson was "barely doing [her] job," even though Gibson received three awards for her 2023 work – one each in March, June and August 2023 and, at the very time Stepaniuk declared that Gibson was "barely doing [her]job", Gibson had just received three 2024 awards (one in January and two in March 2024). Stepaniuk

Plaintiff's Response in Opposition to                    7
Defendants' Partial Motion to Dismiss

recommended a 1.6% raise for Gibson that year despite the overwhelming success of a 2023 new product campaign that Gibson led. Dkt. 20 at ¶32.

- Gibson complained about Stepaniuk again in March 2024, but no manager or HR representative contacted Gibson to address the concerns she raised. Dkt. 20 at ¶33.

- Gibson attempted to transfer to another business unit. A manager in the other business unit, who knew Gibson and wanted her to work for her, asked Gibson to apply for a position similar to her current Marcom position but Abbott said "no," even though Gibson met the qualifications for a transfer. Dkt. 20 at ¶35-36.

- Abbott suggested Gibson get another job outside Abbott, refused to effectively address the **hostile work environment** created by Stepaniuk's ongoing harassment and discrimination, refused to allow Gibson to transfer out of the business unit and out from under Stepaniuk's supervisory control, and Gibson ultimately was compelled to leave her position with Abbott because of Abbott's refusal to effect a resolution to the **hostile work environment** and the deleterious effect Stepaniuk's age-based hostility had on Gibson's health. Dkt. 20 at ¶37 (emphasis added).

- The **hostile work environment** and Abbott's failure to take appropriate corrective measures caused Gibson to suffer significant emotional distress, economic damages, and harm to her professional reputation. Two of Gibson's doctors made note of the work stress and attributed Gibson's depression, anxiety, and racing heart issues to the stress caused by the work environment resulting from Stepaniuk's discriminatory treatment. Gibson's doctors prescribed anti-depressants and later, anti-anxiety medicine to assist Gibson in handling the stress. She also sought counseling through a resource provided by Abbott to its employees. Dkt. 20 at ¶38.

Although Gibson repeatedly alleged a hostile work environment and retaliatory hostile work environment, Defendants apparently are attempting to exalt form over substance – perhaps because there are no separately-labelled "Claims" named "Hostile Work Environment" or "Retaliatory Hostile Work Environment". But those claims are subsumed in the Retaliation and Age Discrimination claims as they are part and parcel of those claims and the First Amended Complaint incorporates all preceding allegations into those "labelled" claims. *See* Dkt. 20 at ¶¶49 and 55 ("The foregoing allegations are incorporated herein as if fully set forth in their entirety."). Both claims further expressly include a subset list of the discriminatory and retaliatory conduct, including that Gibson "was constructively discharged as a result of the foregoing and Stepniuk's

discriminatory pattern of bullying behavior and intentionally unfair and harassing treatment. No reasonable person could tolerate Stepaniuk's frequent and continuously hostile treatment and the negative impacts on their job and reputation." Dkt. 20 at ¶¶52 and 58. These allegations are sufficient and Gibson should not be is required to repeat all of the same lengthy allegations from the preceding sixteen pages over and over again in her pleading.

Labelling claims is not a pleading requirement under Rule 8, the "notice" pleading rule. Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *McClain v. United Airlines*, No. H-24-0050, 2024 U.S. Dist. LEXIS *5 (W.D. Tex. Feb. 5, 2024). The First Amended Complaint is not so short, but it plainly sets out Gibson's claims for the hostile work environment and retaliatory hostile work environment created by Stepaniuk's pervasive and aggressive discriminatory conduct. All that is required of Gibson under Rule 8 is to give Defendants fair notice of what her claims are and the grounds upon which those claims rest. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167, L. Ed.2d 929 (2007). Gibson has done that.

**C. The First Amended Complaint pleads hostile work environment and retaliatory hostile work environment claims.**

    1. <u>Gibson's Hostile work environment and retaliatory hostile work environment claims were timely filed</u>.

There can be no dispute that the Fifth Circuit has recognized for many years now claims arising from a hostile work environment in the context of age discrimination allegations. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir.2011) ("We now hold that a plaintiff's hostile work environment claim based on age discrimination under the ADEA may be advanced in this court.").

Although the Fifth Circuit itself has not determined whether a plaintiff can pukl.rsue a retaliatory hostile work environment claim, the court has acknowledged that several other circuits have recognized such claims, including the Second, Sixth, Seventh, Ninth, and Tenth Circuits. *See Bryan v. Chertoff*, 217 F. App'x 289, 293-94 (5th Cir. 2007). Several district courts, including district courts in the Western District of Texas, have assumed the retaliatory hostile work environment cause of action exists unless and until the Fifth Circuit holds otherwise. *See, e.g., Green*, 2022 U.S. Dist. LEXIS 214236 at *9-10 ("[T]he general practice of trial courts in the Fifth Circuit is to assume a cause of action for retaliatory hostile work environment exists until the Fifth Circuit directs otherwise."); *McCorvey*, 2016 U.S. Dist. LEXIS 195249 at *28-31 (engaging in lengthy discussion of case law and concluding, "So while the Fifth Circuit has not decided whether 'retaliatory hostile work environment' is a cause of action, that has not stopped it–nor this Court and nor this Court's sister courts–from addressing the component elements of a retaliatory hostile work environment claim in substance.").

The continuing violation doctrine applies to hostile work environment claims. These claims are typified by multiple acts occurring over an extended time such that the unlawful employment practice cannot said to have occurred on any particular given day. Hostile work environment claims require that the complaint of discrimination be filed with the TWC or EEOC within 180/300 days of one or more of the acts that "contributed to the hostile work environment." *EEOC v. WC& M Enters*, 496 F.3d 393, 398 (5th Cir. 2007) (summary judgment case); *Green*, 22 U.S. Dist. LEXIS 17330852 at *6. The court may consider all of the acts on which the hostile work environment claim is based despite any number of other acts having occurred outside the 180/300 days. *WC&M*, 496 F.3d at 398; *Green, 2022* U.S. Dist. LEXIS 214236 at *6-7; *McCorvey*, 2016 U.S. Dist. LEXIS 195249 at *43-45. This statement is true for "retaliatory" hostile work

environment claims as well. *See, Green,* 22 U.S. Dist. LEXIS 17330852 at *6-7 (retaliatory hostile work environment claim); *McCorvey,* 2016 U.S. Dist. LEXIS 195249 at *43-45 (retaliatory hostile work environment claim). In this case, the constructive discharge and other allegations like Stepaniuk's re-assignment of Gibson's job responsibilities occurred within the 180-day period for filing the Discrimination Complaint.

        2.   <u>Gibson has pled plausible claims for hostile work environment<br>and retaliatory hostile work environment</u>.

For her hostile work environment claim, Gibson must plead facts that plausibly support allegations that "(1) [s]he was over the age of 40; (2) [she] was subjected to harassment, either through words or actions based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Dediol,* 655 F.3d at 441 (summary judgment case); *LiVolsi,* 2024 U.S. Dist. LEXIS 209019 at *9 (Under Title VII, "But where a harassment claim arises out of a supervisor's conduct" it is not necessary to show the employer knew or should have known of the harassment and failed to take remedial actions.").

The First Amended Petition contains allegations that meet all of the elements of a hostile work environment. Gibson is over 40 and was 60-62 while employed at Abbott. She was 62 at the time she filed her Original Complaint. Dkt. 20 at 11. The First Amended Complaint contains numerous allegations about the ongoing harassment Gibson suffered at the hands of her direct supervisor at Abbott – Stepaniuk – because of her discrimination against Gibson on the basis of Gibson's age, beginning almost from the beginning of their acquaintance. *See* Section II.B.1 above for citations to the First Amended Complaint for the intimidating, hostile, and offensive actions directed to Gibson by Stepaniuk. There are pages of specific allegations describing the pervasive and dogged aggression displayed by Stepaniuk against Gibson. Gibson alleges that Stepaniuk gave

her a negative performance review for 2022 – a year during which Stepaniuk was not Gibson's supervisor – along with a small raise of 3% when Gibson had received excellent performance feedback from her actual manager and other management, including several awards from upper management. Dkt. 20 at ¶20.

The First Amended Complaint contains allegations that Stepaniuk was a supervisor herself and should have been aware that her behavior was wholly improper and violated the Texas Labor Code. Gibson also alleges that she spoke with another manager in a different division who recommended she report Stepaniuk for her discriminatory behavior. Dkt. 20 at ¶21. Gibson did complain to Abbott both in writing and verbally to no avail. *Id.* at ¶¶ 21 and 33.

Gibson alleges that Stepaniuk continued to engage in ever-increasing scrutiny of Gibson's every move, scolding her and bullying her at every turn. *See* Dkt. 20 at ¶¶23-26. Stepaniuk refused to allow Gibson to attend conferences, annual sales meetings, and other meetings, which were part of Gibson's job description when she accepted her job at Abbott and instead allowed Gibson's younger co-workers to attend the conferences. *Id.* at ¶¶27 and 30. When Gibson attempted to transfer out of the Neuromodulation unit, Abbott refused permission but also failed to tell Gibson why she was not allowed to transfer. Dkt. 20 at ¶¶35-36. There are numerous other allegations of the harassment to which Stepaniuk subjected Gibson. *See* Section II.B.1.

Gibson also has pled a plausible claim for retaliatory hostile work environment. The test for this claim is a hybrid one that borrows elements from retaliation and hostile work environment claims. *McCorvey*, 2016 U.S. Dist. LEXIS 195249 at *31-32. The elements of the retaliatory hostile work environment claims are (1) Gibson engaged in protected activity; (2) She was subjected to unwelcome harassment; and (3) there was a causal link between the harassment and the protected activity. *Green*, 2022 U.S. Dist. LEXIS 214236 at •10-11; *McCorvey*, 2016 U.S.

Dist. LEXIS 195249 at *31-32. Gibson has alleged that she reported Stepaniuk in writing and verbally more than once. After the initial report, Stepaniuk within a short time – a few weeks – "stepped up" the harassing behavior toward Gibson. Dkt. 20 at ¶22. The First Amended Complaint asserts that Stepaniuk's increased hostility and unreasonable rebukes and disparaging treatment were done in retaliation for Gibson's reporting Stepaniuk's unlawful age discrimination against Gibson. *Id.* at ¶22. There are allegations that Stepaniuk kept up the humiliating interactions, denigrating Gibson in front of her co-workers, using a double standard when it came to Gibson, and chastising Gibson excessively for minor mistakes in emails when Stepaniuk herself made the same kinds of mistakes and worse. Dkt. 20 at ¶¶25-26. The First Amended Complaint asserts Stepaniuk gave Gibson another negative review in 2024 for her work in 2023 along with another low raise – 1.6% – despite Gibson having had another successful year in her work. Dkt. 20 at ¶¶

Other allegations show that Stepaniuk began assigning less favorable work to Gibson than she assigned to the younger co-workers, giving Gibson the work that newly hired employees would normally be given while Gibson was a Senior Specialist. Gibson has further alleged that by the end of her employment with Abbott, Stepaniuk had orchestrated a reduction in the work Gibson was hired to do, giving that work to Gibson's younger co-worker, and instead shifting the lower-level work to Gibson such as proofing PowerPoint Presentations and overseeing the printing and storage of sales collateral. Dkt. 20 at ¶¶11, 28-29, and 34.

Even if Gibson's allegations are based on her "subjective beliefs, alone, she has pled more than sufficient facts to assert plausible claims for hostile work environment and retaliatory hostile work environment." *Green,* 2022 U.S. Dist. LEXIS214236 at •12-13; *see, also, LiVolsi,* 2025 U.S. Dist. LEXIS 209019 at *10-11. Gibson has alleged that the discriminatory conduct was a very

frequent and unwelcome burden to her in performing her job and one that resulted in significant emotional distress to her, economic harm, and harm to her professional reputation. Dkt. 20 at ¶38.

If the Court disagrees that Gibson's pleading is sufficient and instead determines that it is deficient in pleading the hostile work environment and retaliatory hostile work environment claims, Gibson respectfully requests that the Court allow her to re-plead and address the deficiencies.

## CONCLUSION

For the reasons set out above, Gibson requests that the Court deny Defendants Partial Motion to Dismiss.. Gibson further asks the Court to allow her to re-plead in the event the Court finds the First Amended Complaint to be deficient.

Dated: April 13, 2026                    Respectfully submitted,

                                         LeBoeuf Law, PLLC

                                         By: /s/ Mary L. Scott
                                             Mary L. Scott
                                             Texas Bar No. 17906750
                                             325 N. St. Paul St., Suite 3400
                                             Dallas, Texas 75201
                                             Telephone: (214) 624-9806
                                             Facsimile: (214) 602-4353
                                             mscott@leboeuflaw.com

                                         ATTORNEYS FOR PLAINTIFF JODY GIBSON

## CERTIFICATE OF SERVICE

I hereby certify that, on April 13, 2026, I served the foregoing document on the following counsel for Defendants by filing it through the Court's CM/ECF System and by email/pdf.

Esteban "Steve" Shardonofsky
Texas Bar No. 24051323
Rachel M. Hoffer
Texas Bar No. 24065432
700 Milam Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340
sshardonofsky@seyfarth.com
rhoffer@seyfarth.com

/s/ Mary L. Scott
Mary L. Scott

Plaintiff's Response in Opposition to    15
Defendants' Partial Motion to Dismiss